[Cite as *U.S. Bank N.A. v. Wilkens*, 2012-Ohio-1038.]

[Please see original opinion at 2012-Ohio-263.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    96617

# U.S. BANK N.A.

PLAINTIFF-APPELLEE

vs.

# JOHN C. WILKENS, ET AL.

DEFENDANTS AND THIRD-PARTY
PLAINTIFFS-APPELLANTS

vs.

# OCWEN LOAN SERVICING, LLC

THIRD-PARTY DEFENDANT AND
APPELLEE-CROSS-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART,
## AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-632289

**BEFORE:**    Boyle, P.J., Cooney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    March 15, 2012

**ATTORNEY FOR APPELLANTS**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio    44103-1125

**ATTORNEYS FOR APPELLEES**

Martha Van Hoy Asseff
Charles E. Ticknor III
Dinsmore & Shohl, LLP
191 W. Nationwide Boulevard
Suite 300
Columbus, Ohio    43215

ON RECONSIDERATION

MARY J. BOYLE, P.J.:

{¶1} The original announcement of decision, *U.S. Bank v. Wilkens*, 8th Dist. No. 96617, 2012-Ohio-263, 2012 WL 253295, was released January 26, 2012. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 2.2(A)(1).

{¶2} The Wilkenses appeal from a judgment granting plaintiff-appellee U.S. Bank's motion to compel arbitration. The Wilkenses raise one assignment of error for our review:

{¶3} "The judgment of the trial court granting appellee U.S. Bank's motion to stay proceedings and compel arbitration is contrary to law and constitutes a denial of [appellants'] right of access to the courts and their right to a jury trial, guaranteed by Article I, Sections 5 and 16 of the Constitution of the State of Ohio."

{¶4} Third-party defendant-appellee and cross-appellant, Ocwen Loan Servicing, LLC ("Ocwen"), raises one assignment of error for our review:

{¶5} "The trial court abused its discretion by refusing to stay the litigation and compel arbitration of the Wilkenses' third-party claims against [Ocwen]."

{¶6} We find no merit to the Wilkenses' arguments, but we do find merit to Ocwen's. Thus, the trial court's judgment is affirmed in part, reversed in part, and remanded.

Procedural History and Factual Background

{¶7} John Wilkens executed a promissory note and mortgage in December 2002, agreeing to pay Metro Center Mortgage, Inc. ("Metro Center") $85,000 for property located in Garfield Heights, Ohio. John Wilkens executed a separate arbitration rider with Metro Center that was incorporated into the loan agreement by reference. Ruth Wilkens signed the mortgage, but not the note or arbitration rider.

{¶8} In August 2007, U.S. Bank, as the assignee of Metro Center, filed a complaint for a money judgment, foreclosure, and relief against the Wilkenses. In the complaint, U.S. Bank alleged that John Wilkens defaulted in the payment of his loan and owed U.S. Bank $83,681.71 plus interest from August 23, 2004. The complaint further alleged that Ruth Wilkens claimed to have or had an interest in the property.

{¶9} In their answer, the Wilkenses denied the allegations and asserted several counterclaims against U.S. Bank, including fraud, breach of contract, intentional infliction of emotional distress, and loss of consortium. The Wilkenses further brought a third-party complaint against Ocwen, U.S. Bank's attorney-in-fact and the servicer of the loan at issue, advancing similar claims against it.

**{¶10}** In April 2008, U.S. Bank moved the trial court to compel arbitration of the Wilkenses' counterclaims and stay further proceedings pending arbitration. Ocwen did not join in the motion. But U.S. Bank requested the court stay the proceedings against Ocwen because the claims against Ocwen were "inextricably intertwined with [Wilkenses'] arbitrable claim against [U.S. Bank]."

**{¶11}** The trial court denied U.S. Bank's motion to compel arbitration of the Wilkenses' counterclaims and stay the proceedings because it found that U.S. Bank had waived its right to arbitrate. U.S. Bank appealed, and this court reversed, concluding that U.S. Bank did not waive its right to arbitrate. *See U.S. Bank, N.A. v. Wilkens,* 8th Dist. No. 93088, 2010-Ohio-262, 2010 WL 323432, ¶ 46 ("*Wilkens I*"). We further reserved the issue of whether the arbitration clause was enforceable, finding that the issue was not ripe for review. *Id.* at fn. 2. With respect to Ocwen, we found that it had not moved the trial court to compel arbitration and stay the proceedings and, thus, the trial court did not err when it denied Ocwen the right to arbitrate. *Id.* at ¶ 47.

**{¶12}** On remand, U.S. Bank *and* Ocwen filed a motion to compel arbitration and stay the proceedings. The trial court granted U.S. Bank's motion to compel and ordered that "any further proceedings are hereby stayed pending arbitration in accordance with the Arbitration Rider." Since the trial court did not mention Ocwen, this court presumes the trial court denied Ocwen's motion to compel and, thus, the Wilkenses' third-party claims

against Ocwen were stayed pending the arbitration proceedings. *Temple v. Fence One, Inc.*, 8th Dist. No. 85703, 2005-Ohio-6628, 2005 WL 3436354, ¶ 27.

**{¶13}** It is from this judgment that the Wilkenses appeal and Ocwen cross appeals, each raising a sole assignment of error for our review.

## Standard of Review

**{¶14}** When addressing whether a trial court has properly granted a motion to stay litigation pending arbitration, this court applies an abuse of discretion standard. *Carter Steel & Fabricating Co. v. Danis Bldg. Constr. Co.*, 126 Ohio App.3d 251, 254-55, 710 N.E.2d 299 (3d Dist.1998). An abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Absent an abuse of that discretion, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748.

**{¶15}** When determining whether an arbitration provision is unconscionable or enforceable, however, this court applies a de novo standard of review. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶2. Under a de novo standard of review, we give no deference to a trial court's decision. *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001).

## Arbitration Agreements

{¶16} Ohio and federal courts encourage arbitration to settle disputes. R.C. 2711.01(A); *ABM Farms Inc. v. Woods*, 81 Ohio St.3d 498, 500, 692 N.E.2d 574 (1998). As a result, a court must indulge a strong presumption in favor of arbitration and resolve any doubts in favor of arbitrability. *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 6 (9th Dist.), quoting *Neubrander v. Dean Witter Reynolds, Inc.*, 81 Ohio App.3d 308, 311, 610 N.E.2d 1089 (9th Dist.1992). An arbitration provision, however, may be held unenforceable on "grounds that exist at law or in equity for the revocation of any contract." *Ball* at ¶ 6. One such ground is unconscionability. *Id.*

{¶17} "An unconscionable contract clause is one in which there is an absence of meaningful choice for the contracting parties, coupled with draconian contract terms unreasonably favorable to the other party." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 30 (9th Dist.). An arbitration provision can be rendered invalid where a party demonstrates the provision is both procedurally and substantively unconscionable. *Featherston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, ¶ 13 (9th Dist.).

{¶18} Substantive unconscionability goes to the specific terms of the contract. *Ball* at ¶ 7. When considering substantive unconscionability, the court should observe

whether the terms of the contract are commercially reasonable. *Eagle* at ¶ 31. With respect to this issue, the Second Appellate District has observed:

> Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular * * * clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993).

{¶19} Procedural unconscionability, on the other hand, involves the circumstances surrounding the execution of the contract between the two parties and occurs where no voluntary meeting of the minds was possible. *Id.* In determining procedural unconscionability, a court should consider factors bearing on the relative bargaining position of the contracting parties — including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract. *Id.*, citing *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (6th Cir.1976). Additionally, the court should consider whether the party who claims that the terms of a contract are unconscionable was represented by counsel at the time the contract was executed. *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 31 (9th Dist.), citing *Bushman v. MFC Drilling, Inc.,* 9th Dist. No. 2403-M, 1995 WL 434409 (July 19, 1995). "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had]

a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *.'" *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1983), quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965).

**{¶20}** We now turn to the arbitration rider at issue to determine whether it is substantively or procedurally unconscionable.

<u>Substantive Unconscionability</u>

**{¶21}** The Wilkenses raise five issues to support their claim that the arbitration rider is substantively unconscionable.

**{¶22}** First, the Wilkenses argue that there is a lack of information in the arbitration rider that relates to their loss of appeal rights. They acknowledge that the arbitration rider references appeal rights, but claims it is "oblique," and "in small print in the body of the arbitration rider." They cite *Felix v. Ganley Chevrolet, Inc.,* 8th Dist. Nos. 86990 and 86991, 2006-Ohio-4500, 2006 WL 2507469, in support of their argument.

**{¶23}** In *Felix*, the arbitration clause was included within an automobile purchase contract and stated in its entirety:

> Arbitration — Any dispute between you and dealer (seller) will be resolved by binding arbitration. You give up your right to go to court to assert your rights in this sales transaction (except for any claim in small claims court). Your rights will be determined by a neutral arbitrator, not a judge or jury. You are entitled to a fair hearing, but arbitration procedures are simpler and more limited than rules applicable in court. Arbitrator decisions are as

enforceable as any court order and are subject to a very limited review by a court.    See general manager for information regarding arbitration process.

**{¶24}** This court found the arbitration clause in *Felix* to be substantively unconscionable for several reasons: (1) the terms of the clause were "ambiguous and misleading"; (2) the clause failed to provide accurate information about the arbitration process; (3) failed to describe the type of arbitration forum the plaintiffs would be bound to participate in; (4) failed to clearly explain how arbitration is "simpler and more limited"; and (5) failed to mention that the burdens are different for each party in the appeal process.    This court concluded:

> Because crucial information about the appellate process was not divulged, we find that the arbitration provision by its incompleteness is not only confusing, but misleading and thus substantively unconscionable. Accepting the arbitration clause as written, plaintiffs could not have known what being bound to arbitration really meant.    The clause does not include some very important and material information plaintiffs would have needed in order to make an informed decision about whether to agree to arbitration.  Because of the absence of any details about the arbitration process that plaintiffs would be bound to, we conclude that when they signed the purchase agreement plaintiffs were substantially less informed than defendant.    The clause, on its face, violates principles of equity. Moreover, the failure of the arbitration provision to divulge certain information could have induced consumers to agree to it.    *Id.*

**{¶25}** We find the arbitration rider in the instant case to be distinguishable.    Here, the rider is a separate page clearly identified in bold print at the top as "ARBITRATION RIDER," and it contains much more information than the short arbitration clause in *Felix*.  Regarding a party's appeal rights and litigation rights, the instant arbitration rider states: "the arbitrators award shall not be subject to appeal except as permitted by the FAA [Federal Arbitration Act]."    Moreover, near the bottom of the arbitration rider, in bold print and capital letters, it states:

The parties acknowledge that they had a right to litigate claims through a court before a judge or a jury, but will not have that right if either party elects arbitration. The parties hereby knowingly and voluntarily waive their right to litigate such claims in a court before a judge or jury upon election of arbitration by either party. You also acknowledge that you will not have the right to participate as a representative, claimant or member of any class action pertaining to any claim that is subject to arbitration, even if such class action is pending on the date of this arbitration rider, except that this arbitration rider will not preclude your participating in a class which has already been certified by a court of competent jurisdiction on or before the date of this arbitration rider.

{¶26} In contrast to the arbitration clause in *Felix*, the arbitration rider at issue here also explains significantly more information regarding the arbitration process than the short clause in *Felix*, which merely states: "See general manager for information regarding arbitration process." Indeed, the arbitration rider in the instant case consists of a full page of information regarding the arbitration process and what governs it (Federal Arbitration Act).

{¶27} The Wilkenses further argue that "the second fundamental flaw in the arbitration rider" with respect to substantive unconscionability relates to attorney fees. They claim that their "counterclaims, set-offs, and third-party claims include common law claims for fraud, interference with contractual relations, and intentional infliction of emotional distress," and that the arbitration rider limits their ability to recover attorney fees. They cite *Post v. Procare Automotive Serv. Solutions,* 8th Dist. No. 87646, 2007-Ohio-2106, 2007 WL 1290091, in support of their argument, claiming the

arbitration rider contains the "same flaw" found in *Post*, where this court found the arbitration clause substantively unconscionable.

**{¶28}** We find *Post* to be distinguishable from the present case. In *Post*, the employees filed an employment discrimination action under R.C. 4112.02(A). The critical issue in that case was whether the limitation on remedies at issue undermined the rights protected by statute. *Id.* at ¶ 15, citing *Morrison v. Circuit City Stores*, 317 F.3d 646, 670 (6th Cir.2003). This court concluded that the arbitration provision limited the right of the employee to recover statutory attorney fees. *Id.* at ¶16.

**{¶29}** Here, however, the arbitration rider protects attorney fees provided by statute. With respect to attorney fees, the arbitration rider states:

> The parties shall each bear the expense of their respective attorney fees, except as otherwise provided by law. If a statute gives you the right to recover these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein.

**{¶30}** Moreover, the Ohio Supreme Court recently found that a provision in a voluntary arbitration agreement requiring both parties to bear their own attorney fees and costs equitably eliminated both parties' ability to recover attorney fees and was not commercially unreasonable. *See Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408.

**{¶31}** The Wilkenses further claim that the arbitration rider is substantively unconscionable because "of the imbalance of the respective rights of the parties to the

arbitration rider." Again, they claim that the arbitration rider contains the same "imbalance" that we found to be substantively unconscionable in *Post*. Regarding this issue in *Post*, this court stated:

> The imbalance of the respective rights of the parties to the employment agreement demonstrates the unconscionability of the arbitration clause. While [the employee] is limited to mandatory arbitration regarding any employment dispute, the agreement provides that [the employer] may bypass arbitration and seek judicial remedies in court in order to obtain injunctive relief for any breach or threatened breach by [the employee] of the covenants contained in the non-competition and confidentiality provisions of the employment agreement. We are not persuaded by [the employer's] assertion that this provision, which allows [the employer] to use a judicial forum when it is the plaintiff, but limits [the employee] to arbitration when he is the plaintiff, is not unconscionable. *Id.* at ¶ 17.

{¶32} In the arbitration rider here, however, the only claim U.S. Bank preserved for a judicial forum was the right to foreclose upon the property at issue if the Wilkenses defaulted on their loan. As this court pointed out in *Wilkens I*, foreclosure actions involve controversies over title and possession to real estate and, thus, are not arbitrable. *Id.* at ¶ 20, citing R.C. 2711.01(B)(1). Therefore, by statute, U.S. Bank could not arbitrate the foreclosure action, even if it wanted to. As such, there is no imbalance in the arbitration rider.

{¶33} The Wilkenses claim that the fourth fundamental flaw in the arbitration rider is that it "contains all of the cost-splitting provisions that the Court of Appeals expressed concern about in *Post*." In *Post*, however, we explained there was not a per se rule of unconscionability regarding cost-splitting provisions of arbitration agreements. *Id.* at ¶

19. Instead, the enforceability of a fee-splitting clause must be decided on a case-by-case basis. *Id.* We explained:

> A cost-splitting provision should be held unenforceable whenever it would have the "chilling effect" of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights. *Id.* at 661. Reviewing courts must consider whether the litigant will incur expenses not incurred in the judicial forum and whether that expense, taken together with the other costs and expenses of the differing fora, would deter potential litigants from bringing their statutory claims in the arbitral forum. The issue is not "the fact that [the] fees would be paid to the arbitrator," but rather whether the "overall cost of arbitration," from the perspective of the potential litigant, is greater than "the cost of litigation in court." *Post* at ¶ 19, quoting *Morrison v. Circuit City Stores*, 317 F.3d 646 (6th Cir.2003).

{¶34} In *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the United States Supreme Court explained: "we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 91-92. Though some expenses may be inherently speculative, the court noted that generic information contained in AAA Commercial Rules and unsupported statements were not enough to satisfy the party's burden of providing factual proof that the costs were prohibitively expensive. *Id.* at fn. 6.

{¶35} The *Green Tree* decision did not endorse the idea that any incurrence of arbitration expenses is necessarily prohibitive; "[r]ather, the Supreme Court's reasoning supports an examination of the actual effect of a fee-splitting provision on the plaintiff's

ability to pursue * * * claim[s], particularly in light of the fact that total litigation expenses frequently far exceed the cost of arbitration." *Manuel v. Honda R & D Ams., Inc.*, 175 F.Supp.2d 987, 994 (S.D.Ohio 2001).

{¶36} In *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 1998-Ohio-294, 700 N.E.2d 859, the Ohio Supreme Court endorsed the principles of *Green Tree*. Determining whether cost-splitting provisions in arbitration agreements involving small consumer loans were unconscionable, the Ohio Supreme Court stated:

> 'The likely effect of these procedures is to deny a borrower against whom a claim has been brought any opportunity to a hearing, much less a hearing held where the contract was signed, unless the borrower has considerable legal expertise or the money to hire a lawyer and/or prepay substantial hearing fees. * * * In a dispute over a loan of $2,000 it would scarcely make sense to spend a minimum of $850 just to obtain a participatory hearing.' *Id.*, quoting *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563 (1993).

{¶37} The Wilkenses did come forward with some evidence of the costs associated with arbitration. They submitted affidavits attesting that "My attorney has reviewed the costs associated with filing a claim with the American Arbitration Association. Due to our limited resources, [we] cannot afford to pay those fees and continue to defend ourselves in the foreclosure action." They also submitted a page from the fee schedule of AAA, and indicated they would be responsible for $2,450 of the initial filing fee, and U.S. Bank would only be responsible for $1,800 of it. They claim that "the amount of such filing fees and other charges puts arbitration beyond their reach."

{¶38} The Wilkenses calculated the amount of the purported filing fee based on the amount of their claims against U.S. Bank and Ocwen, which they assert is at least four to five times the amount of the original loan of $85,000. According to the AAA filing fee schedule, they claim "if the amount of the claim is $300,000 - $500,000, the initial filing fee is $4,250." But we find the Wilkenses' asserted estimate of the amount of their claims to be highly speculative; they even assert "*if the amount of the claim is * * *.*"

{¶39} Regardless, proof of costs alone will not invalidate an arbitration clause. The Wilkenses produced no evidence of the expected cost differential between arbitration and litigation in court. Even accepting the Wilkenses' asserted $300,000 to $500,000 amount for their claims, their incomplete fee estimation ($2,450) comprises less than 1.4 percent of that amount and could easily be exceeded by litigation expenses. We acknowledge that arbitration has other costs associated with it besides the initial filing fee, but the Wilkenses do not provide evidence regarding those costs, and this court will not speculate as to what those costs are. Therefore, the Wilkenses failed to produce sufficient evidence supporting their claim that the undisclosed costs of arbitration rendered the provision unconscionable.

{¶40} The Wilkenses' fifth and final asserted flaw in the arbitration rider is its "ambiguity and confusion." The Wilkenses claim that clauses and terms such as "the party requesting arbitration," "the party initiating arbitration," and "the party filing the

claim," results in the arbitration rider being "hopelessly confusing." We find no ambiguity in those clauses. U.S. Bank is clearly the party requesting (and thus initiating) arbitration, and the Wilkenses are the ones who filed the claims against U.S. Bank (i.e., the Wilkenses' claims are the ones being arbitrated).

**{¶41}** Accordingly, the Wilkenses have not established that the arbitration rider at issue here is substantively unconscionable. Because they have to prove that an arbitration agreement is both substantively and procedurally unconscionable, we need not address the second prong.

**{¶42}** Within their sole assignment of error, the Wilkenses raise several other issues to support their claim that the arbitration rider is not enforceable. First, they claim that U.S. Bank did not prove that it was an assignee of the original lender because Nichelle Jones, a loan analyst for Ocwen, could not authenticate the original loan documents. Specifically, the Wilkenses maintain that Jones could "only state that the copies of documents attached to her affidavits were true and accurate copies of the documents that she found in the file some six (6) years after they were allegedly executed," and that in her deposition, she could not authenticate Scott Anderson's signature, the person who "allegedly executed the assignment."

**{¶43}** We initially point out that the Wilkenses failed to cite any authority in support of this argument. But they appear to be arguing that Jones's affidavit would not

be sufficient evidence to grant U.S. Bank and Ocwen summary judgment. Although we are not dealing with summary judgment, we will briefly address this argument.

**{¶44}** Jones's supplemental affidavit stated that she was a loan analyst for Ocwen, "the servicer and attorney-in-fact for U.S. Bank, * * * the current holder of the subject mortgage." She averred that she had "the care, custody, and control of the account records and loan origination documents pertaining to the subject loan made to John Wilkens," and that the note and mortgage that were attached to her affidavit were true and accurate copies of the original instruments. She further stated that she "made this affidavit based on [her] own personal knowledge obtained from reviewing those files."

**{¶45}** Jones's averment is made upon her personal knowledge. She identified her position, and she referenced the documents attached to her affidavit. Jones's assertions do not violate the hearsay rules of evidence because they

> refer to business records which are not hearsay; they are records kept in the course of regularly conducted business activity, it was the regular practice of that business activity to make the records, and the affiant stated they were in her immediate control and supervision and thereby she is a person with knowledge regarding the records. Evid.R. 803(6). *Bank One v. Schwartz*, 9th Dist. No. 03CA008308, 2004-Ohio-1986, 2004 WL 840118, ¶ 16 (concluding affidavit comported with Civ.R. 56(E) when affiant was employed as a foreclosure specialist for the bank, indicated that the debtor's loan file was under her immediate control and supervision, and referred to the specific loan documents in the affidavit); compare *Target Natl. Bank v. Enos*, 9th Dist. No. 25268, 2010-Ohio-6307, 2010 WL 5421404, ¶ 11 (rejecting affidavit when affiant failed to identify his position with the bank, failed to state that he had personal knowledge of the matters contained in the affidavit, and did not identify any specific documents attached to the affidavit).

**{¶46}** The Wilkenses appear to be arguing that Jones needed to have firsthand knowledge of the transaction, and actually see Scott Anderson sign the original document. But that is not the case. Rather, "[a] witness providing the foundation [for a recorded business activity] need not have firsthand knowledge of the transaction." *Moore v. Vandemark Co., Inc.*, 12th Dist. No. CA2003-07-063, 2004-Ohio-4313, 2004 WL 1829585, ¶ 18.

**{¶47}** The Wilkenses' challenge to Jones's affidavit lacks merit.

**{¶48}** The Wilkenses also argue that the arbitration rider was not enforceable against the Wilkenses because the lender did not sign it. We disagree. The original lender drafted the arbitration rider and presented it to the Wilkenses when they closed on their home. The arbitration rider was incorporated by reference into the agreement with the lender and made part of the agreement. U.S. Bank is seeking to enforce the arbitration rider against the Wilkenses. To hold that the arbitration rider is not enforceable because U.S. Bank did not sign it would go against ordinary contract principles. *See Garcia v. Wayne Homes, LLC*, 2d Dist. No. 2001CA53, 2002-Ohio-1884 (arbitration agreement enforceable against purchaser despite the fact that vendor did not sign it).

**{¶49}** The Wilkenses further argue that the arbitration rider was not enforceable against Ruth Wilkens because she did not sign it. On this subject, this court recently explained:

Generally, it is well settled that a court cannot compel parties to arbitrate disputes that they have not agreed in writing to arbitrate. *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 10. But courts have recognized some limited exceptions to the rule, such as when a nonsignatory's conduct indicates that he or she assumes the obligation and intends to be bound by the arbitration clause. *Id.* at ¶ 13. * * * [Further], under an estoppel theory, "a nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." *Id. See also Short v. Resource Title Agency, Inc.*, 8th Dist. No. 95839, 2011-Ohio-1577, ¶ 15. *Taylor v. Squires Constr. Co.*, 8th Dist. No. 96492, 2011-Ohio-5826, 2011 WL 5506292, ¶ 30.

**{¶50}** Ruth Wilkens did not sign the note or arbitration rider, but signed the mortgage. She averred in her affidavit that she was present during the closing, that the lender's representative came to her home with all of the documents, and presented them to the Wilkenses. And she clearly benefitted from the agreement. Thus, we conclude that although Ruth Wilkens did not sign the arbitration rider, it is enforceable against her.

**{¶51}** The Wilkenses further claim that their claims are outside the scope of the arbitration agreement because the claims arise from an "entirely new agreement" that they entered into with U.S. Bank on March 28, 2006. We disagree. The arbitration rider provides that it covers

any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement * * *.

{¶52} Thus, any new agreement purportedly entered into between the parties would still fall within the scope of the arbitration clause because it was based on the original agreement, i.e., the note and mortgage.

### Ocwen's Cross Appeal

{¶53} In its cross appeal, Ocwen claims that the trial court erred when it refused to compel arbitration of the Wilkenses' third-party claims against it because they are inextricably intertwined. We agree.

{¶54} A signatory to an arbitration agreement cannot avoid arbitration with a nonsignatory "'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement'" that the signatory signed. *I Sports*, 157 Ohio App.3d 593 at ¶24, quoting *Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773 (2d Circ.1995). The signatory will be estopped from attempting to avoid arbitration because their claims against the nonsignatory "are integrally related to the contract containing the arbitration clause." *Id.* at ¶ 24-25.

{¶55} Here, the Wilkenses' third-party claims against Ocwen are integrally related to their counterclaims against U.S. Bank — which are based on the contract containing the arbitration clause. Indeed, the Wilkenses' claims are nearly identical to the claims they brought against U.S. Bank. Further, the claims arise out of the same set of facts involving an alleged settlement agreement in a prior foreclosure action that U.S. Bank

brought against the Wilkenses (over an alleged default on a loan that John Wilkens entered into in December 2002 — the contract containing the arbitration clause).

{¶56} The Wilkenses further argue that Ocwen waived its right to arbitrate because it waited more than three and one-half years to seek arbitration. This court set forth the law on waiver of right to arbitrate by inconsistent acts in *Wilkens I*, which we will not repeat here. But considering that law and the strong presumption in favor of arbitration, we conclude that Ocwen did not waive its right to arbitrate. *See Wilkens I* at ¶ 27-31. U.S. Bank filed the foreclosure action against the Wilkenses in August 2007. After obtaining leave from the trial court, U.S. Bank moved to compel arbitration, also requesting the court to stay the proceedings against Ocwen. The trial court originally denied U.S. Bank's motion in April 2008, and U.S. Bank appealed. After this court remanded the case to the trial court in *Wilkens I*, Ocwen timely filed its motion to compel arbitration within the deadline set by the trial court. Thus, for much of the three and one-half years, the case was pending on appeal.

{¶57} Accordingly, the Wilkenses' counterclaims against U.S. Bank and their third-party claims against Ocwen will be arbitrated. As such, the Wilkenses' claims against both U.S. Bank and Ocwen will be stayed in the trial court while the Wilkenses' claims against U.S. Bank and Ocwen are being arbitrated.

{¶58} Ocwen's sole assignment of error is sustained.

**{¶59}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
KENNETH A. ROCCO, J., CONCUR