[Cite as *Menter Family Trust v. Menter*, 2023-Ohio-367.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THE MENTER FAMILY REVOCABLE   :
LIVING TRUST,

     Plaintiff-Appellant,     :

                                  No. 111405

     v.                   :

RICHARD MENTER, ET AL.,     :

     Defendants-Appellees.    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 9, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-956010

---

### *Appearances:*

Michael K. Ashar & Associates and Michael K. Ashar;
Halberg & Associates, LPA, Leslie A. Weiss, and William
S. Halberg, *for appellant*.

Matasar Jacobs, LLC, Jennifer A. Lesny Fleming, Scott C.
Matasar, and Annamarie E. Braga, *for appellees*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Plaintiff-appellant, The Menter Family Revocable Living Trust ("appellant" or "The Trust"), appeals from the trial court's March 2, 2022 judgment granting the motion to stay proceedings and compel arbitration filed by defendants-appellees, Michael Mawby and We Are One Seven, LLC, d.b.a. One Seven (collectively "appellees"). The trial court's judgment also dismissed the case without prejudice. After a careful review of the facts and pertinent law, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.

**Factual and Procedural History**

{¶ 2} The Trust was created in June 1998 by Jerome and Therese Menter, husband and wife, as grantors and initial co-trustees. At that time, Jerome and Therese had five living sons who were contingent beneficiaries of The Trust: Michael, Richard, Christopher, Joseph, and John.

{¶ 3} Appellee Mawby is an investment advisor at appellee We Are One Seven. According to the complaint, in the summer of 2020, Richard Menter and Mawby went to Jerome and Therese's home, where they met with Therese. As a result of that meeting, "[d]ocuments were executed and a financial account for the [Trust] was created to be managed by defendants Mawby and One Seven and administered through defendant Ameritrade." Complaint, ¶ 4. Later in December 2020, Therese had a stroke and "suffered a loss of competency which continued through and until her death on January 31, 2021." *Id.* at ¶ 5.

**{¶ 4}** When Therese Menter died, Michael Menter became a co-trustee with his father, Jerome Menter. As a co-trustee, Michael initiated this action for appellant.[1] In addition to appellees Mawby and We Are One Seven, the other named defendants are Richard Menter, John Menter and his wife Susan Menter, TD Ameritrade, and John Does 1-4.

**{¶ 5}** Appellant alleges that Richard Menter "assumed an identification and relationship of trust and dominance over his mother." *Id.* at ¶ 5. It further alleges that a few days before Therese's death, defendant Richard Menter and appellee Mawby met at Richard's house, where Therese was then living. As a result of the meeting, approximately $545,000 was transferred from The Trust account, which was approximately 85% of the funds in the account, to "an individual account partially or completely owned and controlled by defendant Richard Menter and/or his wife, defendant Susan Menter." *Id.* at ¶ 10. Allegations continue that the transfer was intentional and/or negligent and appellees and defendant Ameritrade assisted in it, without the knowledge and/or consent of Jerome, and at a time when Therese was physically and mentally incapacitated. Based on these allegations, The Trust asserted claims for theft, fraud, receiving stolen property, breach of fiduciary duty, and negligence.

---

[1] At the time this action was initiated, certain additional estate planning measures had been undertaken and defendants Richard and John Menter were no longer beneficiaries of The Trust. Christopher and Joseph Menter are deceased.

**Appellees' Motion to Stay Proceedings and Compel Arbitration**

{¶ 6} Appellees filed a motion to stay proceedings and compel arbitration under "the Ohio Arbitration Act, Ohio Rev. Code [Section] 2711.01, et seq., and the Federal Arbitration Act, 9.U.S.C. [Section] 2." In their motion, appellees relied on R.C. 2711.02 and its federal counterpart, 9 U.S.C. 3, which contains almost identical language to R.C. 2711.02.

{¶ 7} In support of their motion, appellees submitted a five-page document titled "Investment Advisory Agreement." The first page of the document indicates that it is dated July 9. The year is partially illegible; "20" is clear, but the remaining part is not. The client identified on the first page is Therese Menter. Other than the illegible year on the first page, the first three pages of the document are clearly legible. Section 12 of the document, set forth on the third page, provides for mandatory, binding arbitration.

{¶ 8} Pages four and five of the agreement are partially legible, including the following. On page four there is a signature block, directly above which provides: "By executing this Agreement, the parties acknowledge and accept their respective rights, duties, and responsibilities. This Agreement contains a binding arbitration clause that is acceptable by the Parties." Therese Menter and Jerome Menter signed in the signature block. There is no notation that they signed as trustees of The Trust or otherwise on behalf of The Trust.

{¶ 9} Page five is "Schedule A – Custodian and Accounts" and provides that "[t]he Client has appointed TD Ameritrade, Inc. as its Custodian * * * pursuant to

the terms in Item 4 of this Agreement." There is a "Client Acknowledgment" dated July 9, 2020, and contains the initials "T.M." and "J.M." There is no indication that T.M. and or J.M. initialed as trustees or otherwise on behalf of The Trust.

**Appellant's Opposition**

{¶ 10} Appellant opposed the motion and requested a hearing. Appellant contended that the Investment Advisory Agreement "is a blatantly questionable document which has seemingly been pieced together with miscellaneous pages that appear to be nonconforming." According to appellant, the date on the first page is July 9, 2018, which conflicts with the date of July 9, 2020, on the last page. Appellant further contended that it is suspect that only Therese Menter is named as a client on the first page. Appellant also noted that The Trust is not mentioned anywhere in the document.

{¶ 11} In support of its opposition, appellant submitted an affidavit from Jerome Menter. Jerome averred that he never met or spoke with Mawby "until a few months following the death of [Therese] who died on January 31, 2021." Jerome Menter affidavit, ¶ 4. Jerome further averred that the first time he saw the subject agreement was "within the past two weeks" "when it was presented to him." *Id.* at ¶ 5. According to Jerome's affidavit, he did "not believe that [his] signature appears on that document." *Id.* Further, appellant contended that "[e]ven if the Court finds that [The Trust] is subject to the Investment Advisory Agreement * * * Defendants Mawby and [One] Seven failed to comply with Ohio Revised Code 2711.03(A)."

**Appellees' Reply**

{¶ 12} Appellees vehemently denied appellant's assertion of irregularities with the agreement and accusation of forgery. Appellees contended that the date on the first page of the agreement is the same as the date on the last page — July 9, 2020. They submitted an affidavit from Michael Mawby in support of their claims and denials.

{¶ 13} Mawby averred that he met with Therese Menter on July 9, 2020, to have her sign the agreement, which indeed she did. Both John Menter and Jerome Menter were present at the meeting. Therese had "physical CSX stock certificates" that she wanted transferred "into a more easily liquidated form that could be held in a brokerage account." Michael Mawby affidavit, ¶ 3. Mawby averred that Jerome executed paperwork to be submitted to TD Ameritrade; the paperwork was dated July 9, 2020, and Mawby witnessed him execute it.

{¶ 14} Mawby explained why the Investment Advisory Agreement is not made out in the name of The Trust as follows:

> It is the practice of One Seven to have clients sign an omnibus "master" Investment Advisory Agreement governing the client's overall relationship with One Seven. This is because clients often establish multiple accounts with One Seven for themselves, children, grandchildren and other relatives — as was the case with the Menters. The [Investment Advisory Agreement] therefore applies with equal force to the Trust as [d]o other accounts maintained by Therese and/or Jerome Menter with One Seven.

*Id.* at ¶ 6.

{¶ 15} Mawby averred that The Trust has been charged investment management fees since July 2020 pursuant to the Investment Advisory Agreement.

He further averred that the date on the first page of the agreement is July 2020, not July 2018.

{¶ 16} Mawby also explained the difference in the physical appearance between the first three pages and the last two pages of the agreement as follows:

> After I met with Therese Menter at her residence on July 9, 2020 to sign the [agreement], I determined that Jerome Menter's signature also was required on the [agreement], as well as on paperwork to transfer the proceeds of an annuity purchased from Jackson National Life, which was to be used to help fund the Trust's corpus.
>
> Accordingly, I returned to Therese and Jerome Menter's residence on July 13, 2020 to meet with Jerome.
>
> * * *
>
> During my July 13, 2020 meeting with Jerome Menter, I witnessed him execute a signature page for the [agreement] with his own hand.
>
> * * *
>
> After Jerome Menter executed the signature page for the [agreement] on July 13, 2020, I photographed the document and transmitted it electronically to my administrative assistant at One Seven. This is why the last two pages of the [agreement] have a physical appearance different from that of the first three pages of the [agreement].

*Id.* at ¶ 8, 9, 11, and 13.

{¶ 17} Mawby averred that after his meeting with Therese and Jerome on July 13, he exchanged text messages with the Menters' son Richard. A screenshot of the messages accompanied his affidavit. Mawby texted Richard, "I met with [your mother], and your father signed where we needed. He was very pleasant to me. Thanks Rick!"

{¶ 18} The appellees also submitted an affidavit from John Menter in support of their reply brief. John averred that, at the relevant time, he was living in Therese and Jerome Menter's home. He stated that he was present for the July 9, 2020 meeting that Mawby and Therese had and that Jerome was at the meeting as well. John averred that he saw "both Therese and Jerome affix their signatures to new account paperwork to be submitted to TD Ameritrade, which was to be the custodian for their securities brokerage account." John Menter affidavit, ¶ 6. John also averred that Mawby returned to his parents' house on July 13 so that Jerome could sign additional paperwork, and that he (John) "saw [Jerome] sign the signature page for additional paperwork required by Mr. Mawby with his own hand." *Id.* at ¶ 9.

{¶ 19} In regard to appellant's contention about appellees' failure to comply with R.C. 2711.03(A), appellees stated that "it is unclear if R.C. 2711.03(A) even applies to [appellees'] Motion to Stay and Compel Arbitration filed in this case."

**Trial Court's Judgment**

{¶ 20} The trial court granted appellees' motion to compel arbitration and ordered the "parties to initiate arbitration proceedings immediately under the terms of the investment advisory agreement." The trial court also dismissed the case without prejudice and advised the parties to inform the court if the case needed to be reactivated following the arbitration proceeding.

**Assignments of Error**

I. The trial court erred by dismissing plaintiff's complaint and referring this matter to arbitration as the court failed to hold an evidentiary hearing pursuant to law.

II. The trial court erred by granting arbitration and dismissing plaintiff's complaint and referring this matter to arbitration where the court failed to hold an evidentiary hearing to determine if there was a valid arbitration clause and there was no valid contract between the parties providing for arbitration.

III. The trial court erred by granting arbitration and dismissing plaintiff's complaint and referring this matter to arbitration where the court failed to hold an evidentiary hearing to determine whether the case was suitable for arbitration and where the case was not suitable for arbitration and therefore not referable for arbitration pursuant to law where there are allegations of criminal misconduct and wrongdoing.

IV. The trial court erred by granting arbitration and (a) dismissing plaintiff's complaint in its entirety rather than staying this matter as it relates to defendants Mawby and We are One Seven LLC only pursuant to law and (b) dismissing plaintiff's complaint in its entirety against defendants Richard Menter, Susan Menter and John Menter and TD Ameritrade as they are not parties to an alleged arbitration clause and have not joined in or otherwise requested arbitration.

V. The trial court erred by dismissing plaintiff's complaint and referring this matter to arbitration upon the trial court considering defendants' reply brief although the reply brief was not permitted to be filed without leave of court, the filing was contrary to law, and the reply brief included new and contested allegations and plaintiff was not given an opportunity to respond.

**Law and Analysis**

{¶ 21} We first consider one of the issues raised in appellant's fifth assignment of error, that is, whether appellees' reply brief was properly before the trial court. Appellant contends that the trial court erred by considering appellees'

reply brief because it was filed without leave of court and included "new and contested allegations," which left appellant unable to respond.

{¶ 22} The decision of a trial court to consider a reply brief is left to the court's sound discretion. *Farmer v. Luntz Corp.*, 8th Dist. Cuyahoga No. 61873, 1993 Ohio App. LEXIS 196, 4 (Jan. 21, 1993). In *Farmer*, this court held that it was not an abuse of discretion to deny a motion to strike a reply brief, or the attached evidentiary documents, that was filed without leave of court. *Id.*

{¶ 23} Parties are not permitted to raise new arguments or evidence in a reply brief because the nonmoving party does not have an adequate opportunity to respond under the Ohio Rules of Civil Procedure. *Foradis v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 103454, 2016-Ohio-5235, ¶ 8. However, courts permit the filing of a reply brief containing a supplemental affidavit where the reply rebuts arguments set forth in the brief opposing the initial motion and the supplemental affidavit clarifies previously raised issues. *Deutsche Bank Natl. Trust Co. v. Ayers*, 11th Dist. Portage No. 2019-P-0094, 2020-Ohio-1332, ¶ 47-48.

{¶ 24} Here, appellees' reply brief did not raise new arguments. Rather, it responded to arguments made by appellant in its brief in opposition. Specifically, appellees attempted to contradict Jerome Menter's contention that he did not sign the Investment Advisory Agreement.

{¶ 25} Moreover, appellant neither filed a motion to strike the reply brief nor a leave to file a surreply brief. Further, almost two months elapsed from the filing of appellees' reply brief to the court's ruling and appellant did not request additional

time to depose Mawby or conduct further discovery. Absent an objection, the trial court was free to consider the affidavits attached to the reply brief. *Lewis Potts, Ltd. v. Zordich*, 11th Dist. Trumbull No. 2018-T-0028, 2018-Ohio-5341, ¶ 41; *see also Brown v. Ohio Cas. Ins. Co.*, 63 Ohio App.2d 87, 90-91, 409 N.E.2d 253 (8th Dist.1978) (the trial court did not err when it considered unverified documents to support a summary judgment motion where neither party objected to the other's use of those materials).

{¶ 26} There was no abuse of discretion by the trial court in allowing appellees' reply brief and the attached affidavits to stand. That issue raised in the fifth assignment of error is therefore overruled.

{¶ 27} We next consider appellant's arguments raised in the first, second, and third assignments of error relative to the trial court's failure to hold a hearing.

{¶ 28} In its first assignment of error, appellant contends that the trial court erred by not holding a hearing on appellees' motion because "an evidentiary hearing is mandatory for the purpose of determining whether or not conditions necessary to enforce arbitration are met," and appellant requested a hearing.

{¶ 29} In its second assignment of error, appellant contends that the trial court failed to hold a hearing to determine if there is a valid arbitration clause and whether there is a valid contract between appellant and appellees. Appellant argues that the Investment Advisory Agreement "fails to identify the trust in any way whatsoever as a party" to the contract. Appellant further contends that the

agreement is not a valid, binding contract because it is not signed by either appellee and, moreover, does not bind arbitration between appellant and appellees.

{¶ 30} For its third assigned error, appellant contends that the trial court erred by not holding a hearing to determine whether the subject matter was suitable for arbitration given its allegations of criminal misconduct and wrongdoing.

**Arbitration Generally and Standard of Review**

{¶ 31} Ohio law recognizes a presumption favoring arbitration when the parties' dispute falls within the scope of an arbitration provision. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27. Because of this strong presumption favoring arbitration, all doubts should be resolved in its favor. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15.

{¶ 32} When addressing whether a trial court has properly granted a motion to stay and compel arbitration, the appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7.

{¶ 33} Generally, an abuse of discretion standard applies as to whether a trial court has properly granted a motion to stay litigation pending arbitration. *Id.*, citing *U.S. Bank, N.A. v. Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-263, ¶ 13; *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103, ¶ 8. However, when the issue is whether a party has agreed to

submit an issue to arbitration or questions of unconscionability are raised, we review the matter under a de novo standard of review. *McCaskey* at *id.*; *see also Taylor Bldg.* at ¶ 2.

**R.C. 2711.02 and 2711.03**

{¶ 34} In Ohio, arbitration is codified in Chapter 2711 of the Revised Code. *Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 17. R.C. 2711.02 and 2711.03 govern arbitration agreements.

{¶ 35} R.C. 2711.02 is titled "Court may stay trial." Under R.C. 2711.02(B), on application of one of the parties, a trial court may stay litigation in favor of arbitration pursuant to a written arbitration agreement. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 28. R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 36} Thus, R.C. 2711.02 requires a trial court to stay an action

> on application of one of the parties if (1) the action is brought upon any issue referable to arbitration under a written agreement for arbitration[;] (2) the court is satisfied the issue is referable to arbitration under the written agreement[;] and (3) the applicant is not in default in proceeding with arbitration.

*Fields v. Herrnstein Chrysler, Inc.*, 4th Dist. Pike No. 12CA827, 2013-Ohio-693, ¶ 14.

{¶ 37} R.C. 2711.03, titled "Enforcing arbitration agreement," provides:

The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement.  R.C. 2711.03(A).

{¶ 38} The statute further provides that "[t]he court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement." *Id.*  "If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue."  R.C. 2711.03(B).

{¶ 39} To the extent appellees' motion was made under R.C. 2711.02, this court has held that a trial court is not required to hold a hearing when a party moves for a stay under R.C. 2711.02.  *AJZ's Hauling, LLC v. Trunorth Warranty Programs of N. Am.*, 8th Dist. Cuyahoga No. 109632, 2021-Ohio-1190, ¶ 41.  Rather, "[t]he trial court may stay proceedings 'upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration[.]'"  *Id.*, quoting *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶ 7.

{¶ 40} To the extent appellees' motion is construed as being made under R.C. 2711.03, this court acknowledged in *AJZ's Hauling* that "the plain language of R.C. 2711.03 requires a trial court to hold a hearing on a motion to compel arbitration when the arbitration agreement's enforceability is raised." *Id*. at ¶ 44.[2]

{¶ 41} Regardless of whether appellees' motion was made under R.C. 2711.02 or 2711.03, the trial court needed to satisfy itself that arbitration is proper. *See Molina v. Ponsky*, 8th Dist. Cuyahoga No. 86057, 2005-Ohio-6349, ¶ 18 (noting that the party in that case opposing a hearing on the ground that the request for arbitration was made under R.C. 2711.02 rather than R.C. 2711.03 "puts too fine a point on the distinction between the two statutory provisions," and acknowledging that although a hearing is not required under R.C. 2711.02, "the court must be satisfied of arbitrability before granting a motion to stay").

{¶ 42} Here, appellant is challenging the execution of the arbitration provision itself. However, there is no evidence in the record that the trial court took this into consideration when granting appellees' motion to stay proceedings and compel arbitration. No hearing was held, and the trial court's judgment does not offer any reasoning for us to review as to it satisfying itself that arbitration is proper in this case.

---

[2] The *AJZ's Hauling* panel found that, in that case, the trial court's failure to hold a hearing for a request for arbitration made under R.C. 2711.03 did not constitute reversible error. *Id*. at ¶ 45. We note that *AJZ Hauling* has been accepted for review by the Ohio Supreme Court and one of the issues to be decided is the hearing requirement under R.C. 2711.03. *See AJZ'S Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, *09/14/2022 Case Announcements*, 2022-Ohio-3214.

{¶ 43} On this record, appellant's first, second, and third assignments of error are well taken and sustained only to the extent that they challenge the lack of a hearing.

**Trial Court Erred in Dismissing Complaint**

{¶ 44} In its fourth assignment of error, appellant contends that the trial court erred by dismissing the complaint, rather than staying the action. The dismissal dismissed not only appellees, but also the remaining defendants who are not parties to the Investment Advisory Agreement. Appellant contends that the dismissal "creates unnecessary challenges such as the requirement of refiling the case, the need for additional service on all the parties, timeliness issues, potential problems related to the alleged theft of funds, costs and other miscellaneous issues which may arise due to a dismissal of a case." Appellees do not object to this assignment of error.

{¶ 45} To the extent that appellees' motion to stay proceedings and compel arbitration was made under R.C. 2711.02(B), that statute provides in relevant part as follows:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties *stay the trial of the action until the arbitration of the issue has been had* in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

(Emphasis added.) R.C. 2711.02(B).

**{¶ 46}** Thus, if after the trial court conducts its hearing pursuant to our mandate herein and determines that the subject issues are arbitrable, because R.C. 2711.02 calls for a stay, not a dismissal, of an action referable to arbitration, the trial court should stay the case. Appellant's fourth assignment of error is sustained.

**Conclusion**

**{¶ 47}** There was no abuse of discretion by the trial court in allowing appellees' reply brief to remain part of the trial court record.

**{¶ 48}** The trial court's judgment compelling appellant and appellees to arbitration, without a hearing, is reversed.

**{¶ 49}** Judgment reversed; case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MARY J. BOYLE, J., CONCUR