[Cite as *Taylor v. Squires Constr. Co.*, 196 Ohio App.3d 581, 2011-Ohio-5826.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96492**

# TAYLOR ET AL.,

APPELLEES,

v.

# SQUIRES CONSTRUCTION COMPANY,

APPELLANT.

# JUDGMENT:
# REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No.  CV-745085

**BEFORE:**   Boyle, J., Kilbane, A.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   November 10, 2011

**ATTORNEYS:**

Weltman, Weinberg & Reis and Amanda Rasbach Yurechko, for appellees.

James Konchan, for appellant.

MARY J. BOYLE, Judge.

{¶ 1} Defendant-appellant, Squires Construction Company, appeals from the trial court's decision denying its motion to stay and compel arbitration on the breach-of-contract and unjust-enrichment claims of plaintiffs-appellees, William Taylor, Ruthanne Tindell, and Dan Davis. Finding some merit to the appeal, we reverse and remand for further proceedings.

Procedural History and Facts

{¶ 2} In January 2011, plaintiffs collectively filed the underlying action against Squires, asserting two claims: (1) breach of written or verbal contract and (2) unjust enrichment. According to the complaint, plaintiffs "solicited and engaged customers on behalf of Squires for which [they] were entitled to commissions or payment." Specifically, Taylor sought $39,529.07 in damages, Tindell sought $26,610.47, and Davis sought $10,051.54.

{¶ 3} In lieu of an answer, on February 11, 2011, Squires filed a "motion to stay and motion to compel arbitration," arguing that it had executed separate written agreements with both Taylor and Davis that contained an arbitration provision requiring any dispute to be settled by arbitration. As for Tindell, Squires acknowledged that she never had executed a contract with Squires but argued that her claims, too, should be submitted to arbitration because of her "connection and working arrangements with defendant Davis." According to

its motion, Tindell is a friend of Davis, and Davis requested that "certain of his compensation be assigned to Tindell."

**{¶ 4}** In support of its motions, Squires attached (1) "Independent Sales Representative/Dealer Agreement," allegedly executed between Taylor and Squires, and (2) "Sub-Contractor's Agreement," allegedly executed between Davis and Squires. Both agreements contained an identical arbitration provision, stating: "Any controversy or claim arising out of or relating to this Agreement or breach thereof, shall be settled by arbitration in Cleveland Ohio in accordance with the rules of the American Arbitration Association and judgement upon the award may be entered in any court of competent jurisdiction."

**{¶ 5}** Less than two weeks later, on February 24, the trial court denied the motion to compel, noting that Squires's Exhibit A, the "Independent Sales Representative/Dealer Agreement," did not contain a valid execution page.

**{¶ 6}** From that decision, Squires appeals, raising the following four assignments of error:

**{¶ 7}** "[I.] The trial court erred by failing to apply the provisions of R.C. 2711.01 and 2711.02. In so doing, the trial court negated the existence and enforceability of the parties' Agreement to Arbitrate.

**{¶ 8}** "[II.] The trial court erred in sua sponte denying Squires' Motion to Compel Arbitration without a hearing or a trial on a factual issue as to the date of William Taylor's signature on the Independent Sales Representative/Dealer Agreement. The said Agreement is clearly dated September 8, 1993.

**{¶ 9}** "[III.] The trial court erred in not providing for arbitration concerning plaintiff Dan Davis when Dan Davis' Sub-Contractor's Agreement, exhibit B, provides for mandatory arbitration.

**{¶ 10}** "[IV.] The trial court erred in not providing for arbitration concerning Ruthann Tindell.  Ruthann Tindell's claims are subject to arbitration along with the other plaintiffs."

**{¶ 11}** Because they are related, we will address these assignments of error together.

Standard of Review

**{¶ 12}** We are reviewing the trial court's denial of Squires's motion to stay and motion to compel arbitration after it found that the parties had not executed a valid contract to enforce arbitration.  The pivotal issue is whether the parties had agreed to arbitrate pursuant to a valid contract.  The resolution of the issue therefore involves contract interpretation — a matter requiring the de novo standard of review applied to contract construction.  *N. Park Retirement Comm. Ctr., Inc. v. Sovran Cos. Ltd.*, 8th Dist. No. 96376, 2011-Ohio-5179, ¶ 3, citing *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶ 8 ("The issue of whether a controversy is arbitrable under the provisions of a written contract is a question of law for the trial court to decide").

The Ohio Arbitration Act

**{¶ 13}** In *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 25-27, the Ohio Supreme Court set forth the law on arbitration:

**{¶ 14}** "The Ohio General Assembly in R.C. Chapter 2711 has expressed a strong policy favoring arbitration of disputes.  R.C. 2711.01(A) provides:

{¶ 15} " 'A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'

{¶ 16} "Indeed, the Ohio courts recognize a 'presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.' *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859; see also *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.[1]"

{¶ 17} Additionally, the Ohio Supreme Court has recognized that R.C. Chapter 2711 authorizes direct enforcement of arbitration agreements through an order to compel arbitration pursuant to R.C. 2711.03 and indirect enforcement of such agreements pursuant to an order staying trial court proceedings under R.C. 2711.02. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶ 14. A party may choose to move for a stay, petition for an order to proceed to arbitration, or seek both. Id. at ¶ 18. In *Maestle*, the

---

[1]Ohio's strong policy favoring arbitration is consistent with federal law supporting arbitration. See Federal Arbitration Act, 9 U.S.C. 2 ("A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

Ohio Supreme Court made it clear that a motion to compel arbitration and a motion to stay proceedings are separate and distinct procedures that serve different purposes. Id. at ¶ 17.

{¶ 18} Under R.C. 2711.02(B), "[i]f any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *." (Emphasis added.)

{¶ 19} R.C. 2711.03(A) provides that a party "may petition * * * for an order directing that the arbitration proceed in the manner provided for in the written agreement. * * * The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement."

{¶ 20} Under R.C. 2711.03(B), "[i]f the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. If no jury trial is demanded as provided in this division, the court shall hear and determine that issue."

{¶ 21} With these principles in mind and applying a de novo standard of review, we turn to Squires's first three assignments of error involving whether Taylor's and Davis's claims should have been referred to arbitration based on the two written contracts containing

arbitration provisions. And based on the record before us, we find that the trial court erred in denying Squires's motions without first holding an evidentiary hearing.

Necessity of a Hearing on a Motion to Compel Arbitration

**{¶ 22}** In *Maestle*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, the Ohio Supreme Court held that a trial court is not required to conduct a hearing when a party moves for a stay pursuant to R.C. 2711.02, but may stay proceedings " 'upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration.'" Id. at ¶ 18. The court reasoned, "[T]hat statute does not on its face require a hearing, and it is not appropriate to read an implicit requirement into the statute." Id. at ¶ 19.

**{¶ 23}** Pursuant to R.C. 2711.03, however, where a party has filed a motion to compel arbitration, the court must, in a hearing, make a determination as to the validity of the arbitration clause. *Maestle* at ¶ 18.

**{¶ 24}** Plaintiffs contend that the trial court did not err in failing to hold a hearing because Squires never requested an oral hearing or referred in its motion to R.C. 2711.03—the statutory provision giving rise to the hearing requirement. While we recognize that Squires merely captioned its motion as a "motion to compel" but then failed to request an oral hearing and further failed to comply with the procedural requirements of R.C. 2711.03, we nonetheless find that the trial court erred in failing to hold a hearing as to the claims of Taylor and Davis.

**{¶ 25}** The first contract at issue, "Independent Sales Representative/Dealer Agreement," identified William Taylor and Squires as the two parties to the agreement. On

the last page of the contract, the signature of Taylor appears at the bottom of the page under the caption "IN THE PRESENCE OF," instead of the line matching Taylor's designation in the contract, i.e., "Dealer." Additionally, immediately above the signature lines that contain both Taylor's signature and Squires's general manager's signature is a sentence containing blank spaces as to the date the contract was executed. Based on these defects, the trial court found the agreement unenforceable, noting that it did not contain a valid execution page with the date of the signature of the parties.

{¶ 26} But we find that the trial court was unable to determine whether the contract was unenforceable based on the limited record before it. Here, the alleged defects in the contract render it ambiguous, requiring the consideration of parol evidence. See *N. Frozen Foods, Inc. v. Picciotti*, 8th Dist. No. 95493, 2011-Ohio-2399, ¶ 11, citing *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.*, 138 Ohio App.3d 57, 74, 740 N.E.2d 328, (2000) ("If * * * the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact that may require the consideration of parol evidence to determine the parties' intent"). The absence of the date and the placement of the signature, however, do not automatically render the contract unenforceable. See *Karako v. Lindberg*, 11th Dist. No. 97-L-022, (Apr. 10, 1998) (recognizing that the signature of both parties is not required to establish a valid, written contract). Indeed, given the strong presumption in favor of arbitration, the trial court should not have immediately disregarded the contract as unenforceable without first allowing the parties to present parol evidence to resolve the ambiguities in the agreement.

{¶ 27} Next, we likewise find that the trial court erred in summarily dismissing the arbitration provision contained in the "Sub-Contractor's Agreement" without first holding a hearing on Squires's motion to compel Davis to submit to arbitration. On appeal, Davis contends that Squires failed to establish that he is the same person identified in the agreement because the names are different—the agreement refers to "W. Daniel Davis" as opposed to "Dan Davis." Again, this is an issue that can easily be resolved at a hearing. If in fact the "Sub-Contractor's Agreement" was not executed between Squires and the plaintiff-Davis, then Davis cannot be forced to arbitrate his claim.

{¶ 28} We further note that the trial court denied Squires's motion to stay and motion to compel arbitration prior to any of the plaintiffs' responses to the motion. Plaintiffs have not raised any issues regarding the arbitration provisions being unconscionable or outside the scope of their claims. Prior to having any hearing, the trial court should afford Taylor and Davis the opportunity to respond to Squires's motion.

{¶ 29} In its final assignment of error, Squires argues that the trial court erred in failing to find that Tindell was subject to arbitration "due to her connection and working arrangements with Davis." Although Squires acknowledges that Tindell never executed any written agreement binding her to arbitration, it contends that she should nonetheless be subject to arbitration under an equitable-estoppel or agency theory.

{¶ 30} Generally, it is well settled that a court cannot compel parties to arbitrate disputes that they have not agreed in writing to arbitrate. *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 10. But courts have recognized

some limited exceptions to the rule, such as when a nonsignatory's conduct indicates that he or she assumes the obligation and intends to be bound by the arbitration clause. Id. at ¶ 13. Traditional principles of agency may be applied to bind a nonsignatory to an arbitration agreement. Similarly, under an estoppel theory, "a nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." Id. See also *Short v. Resource Title Agency, Inc.*, 8th Dist. No. 95839, 2011-Ohio-1577, ¶ 15.

{¶ 31} Here, we find that the record is insufficient to determine whether either of these theories apply. Although Squires alleged that Tindell had a "close relation" to Davis, we find that this allegation alone fails to establish an agency relationship. But if Tindell is seeking to recover from Squires's commissions set forth in Davis's agreement—the same agreement that contains the arbitration provision—then Tindell may be subject to arbitration. Because the record is unclear, this too is a matter that can be resolved at a hearing on Squires's motion to stay and compel arbitration.

{¶ 32} Accordingly, we partially sustain the first assignment of error, sustain the second assignment of error, and overrule the third and fourth assignments of error.

{¶ 33} The judgment reversed and the case is remanded to the lower court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

KILBANE, A.J., and SWEENEY, J., concur.