[Cite as *Citraro v. Computertraining.com, Inc.*, 2013-Ohio-3249.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99278**

## COREY CITRARO, ET AL.

PLAINTIFFS-APPELLEES

vs.

## COMPUTERTRAINING.COM INC., ET AL.

DEFENDANTS

## [APPEAL BY SALLIE MAE, INC.]

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-787979

**BEFORE:** Rocco, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 25, 2013

**ATTORNEYS FOR APPELLANT**

Stephen H. Jett
Brian E. Ambrosia
Taft, Stettinius & Hollister, L.L.P.
3500 BP Tower
200 Public Square
Cleveland, Ohio   44114

Jonathan W. Garlough
Robert H. Griffith
Foley & Larnder, L.L.P.
321 North Clark Street
Suite 2800
Chicago, Illinois   60654

Michael C. Lueder
Foley & Larnder, L.L.P.
777 East Wisconsin Avenue
Milwaukee, Wisconsin   53202-5306

**ATTORNEYS FOR APPELLEES**

David R. Mayo
Michael J. Meyer
Benesch, Friedlander, Coplan, & Aronoff, L.L.P.
200 Public Square
Suite 2300
Cleveland, Ohio 44114

KENNETH A. ROCCO, P.J.:

**{¶1}** This case involves the enforceability of an arbitration agreement between plaintiffs-appellees Corey Citraro ("Corey") and Charles Citraro ("Charles") (collectively "the Citraros") and defendant-appellant Sallie Mae, Inc. ("Sallie Mae"). The trial court determined that the arbitration agreement was unenforceable because one of the potential arbitration forums referenced in the agreement had become unavailable. The law governing the arbitration agreement and the language of the agreement itself do not support this conclusion, and so we reverse the trial court's final judgment.

**{¶2}** Corey is a former student at a vocational school owned and operated by the four non-Sallie Mae defendants in this case ("the ComputerTraining defendants"). To finance his education, Corey entered into – and Charles cosigned – a promissory note ("the Note") with Sallie Mae, a private, financial services company specializing in education.[1] The Note includes an arbitration agreement ("the Arbitration Agreement"):

> **XVI. ARBITRATION AGREEMENT**
> To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Sallie Mae Educational Loan Program Promissary Note ("Note").

---

[1]Sallie Mae was originally created in 1972 as a government-sponsored entity, but is now a publicly held, private sector company.

**1. RIGHT TO REJECT**: I may reject this Arbitration Agreement by mailing a signed rejection notice * * * within 60 days after the date of my Note. * * *

**2. IMPORTANT WAIVERS**: If you or I elect to arbitrate a Claim, you and I both waive the right to * * * have a court or a jury decide the Claim * * *.

**3. DEFINITIONS**: In this Arbitration Agreement the following definitions will apply:

"I," "me," and "my" mean each and every Borrower and Cosigner on the Note; [and] the Student on whose behalf the proceeds of the Note have been advanced * * * "You," "your," and "yours" [includes] * * * Sallie Mae * * *. **"Administrator"** means, as applicable, the American Arbitration Association * * * or the National Arbitration Forum * * * provided that the Administrator must not have in place a formal or informal policy that is inconsistent with an purports to override the terms of this Arbitration Agreement. The National Arbitration Forum will be the Administrator unless: (a) you and I agree otherwise; (b) I am the Claimant and I initiate an arbitration before the American Arbitration Association or (c) I assert a Claim in court, you elect to arbitrate the Claim and I give you written notice that I am selecting the American Arbitration Association as Administrator within 20 days thereafter (or, if I dispute your right to require arbitration of my Claim, I select the American Arbitration Association as Administrator within 20 days after that dispute is finally resolved).
* * *

**5. STARTING AN ARBITRATION:** To initiate an arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect.
* * *

**9. GOVERNING LAW:** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the [Federal Arbitration Act], and not by any state law concerning arbitration. * * *

The Arbitration Agreement also contains a severability clause:

**10. SURVIVAL, SEVERABILITY, PRIMACY:** * * * If any portion of

this Arbitration Agreement cannot be enforced, the rest of the Arbitration

Agreement will continue to apply * * *. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Note, this Arbitration Agreement will govern.[2]

{¶3} The Citraros filed a complaint against the ComputerTraining defendants in the Cuyahoga County Court of Common Pleas. The complaint, which arose from the closure of the ComputerTraining schools, asserted claims of negligence, breach of fiduciary duty, negligent misrepresentation, promissory estoppel, breach of contract, and fraud.[3] The Citraros also named Sallie Mae as a defendant, alleging that "Sallie Mae is subject to the claims and defenses that each of its borrowers could assert against ComputerTraining" by operation of the mandatory FTC Holder Notice located in § XIII of the Note.[4]

{¶4} Sallie Mae responded by filing a motion to dismiss the Citraros' complaint or, in the alternative, to compel arbitration. Sallie Mae asserted that the Citraros' claims were governed by the Arbitration Agreement, and that the trial court lacked jurisdiction to hear the Citraros' claims.

---

[2]The Note contains an additional severability clause stating that "[i]f any portion of this Note is held invalid or unenforceable, that provision shall be considered omitted from this Note without affecting the validity or enforceability of the remainder of this Note. Note § XIV.

[3]The ComputerTraining defendants have not answered the complaint nor filed an appearance in this case.

[4]As required under 16 C.F.R. §433.2, the Note contains a notice stating that "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof, recovery hereunder by the debtor not to exceed amounts paid by the debtor hereunder." Note § XIII (Original in all caps.)

{¶5} The Citraros responded, in turn, arguing: (1) that the Arbitration Agreement was unconscionable; and (2) that the Arbitration Agreement was unenforceable as written because the National Arbitration Forum ("the NAF") was no longer available to arbitrate the dispute.[5]

{¶6} The trial court denied Sallie Mae's motion to dismiss or to compel arbitration. The trial court reasoned that Sallie Mae could not elect to arbitrate the Citraros' dispute before the American Arbitration Association ("the AAA") because § XVI(3) of the Note set forth that the NAF was the default arbitration forum, and that the Citraros "are the only parties who may choose to arbitrate the dispute before the AAA." The order did not cite to any law governing the enforceability of arbitration agreements and did not reference the Arbitration Agreement's severability clause. The order expressly stated that it was not addressing the Citraros' unconscionability argument.

{¶7} Sallie Mae now appeals to this court, raising one assignment of error for our review:

> The trial court erred in precluding Sallie Mae from enforcing the arbitration agreement with the Citraros due to the unavailability of one of the two arbitration forums identified in the arbitration agreement.

Finding merit to Sallie Mae's position, we sustain the assignment of error.

{¶8} We review de novo whether the Citraros' claims are subject to the Arbitration Agreement. *See Taylor v. Squires Constr. Co.*, 196 Ohio App.3d 581, 2011-Ohio-5826,

---

[5] After the Citraros and Sallie Mae had signed the Note, the NAF entered into a consent decree divesting itself of the right to oversee arbitrations like the one proposed in this case.

964 N.E.2d 500, ¶ 21 (8th Dist.). In conducting our inquiry, we are instructed to look to the Federal Arbitration Act ("the FAA") and not to state law. Note at § XVI(9).

{¶9} The FAA reflects a "liberal federal policy favoring arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "requiring that 'we rigorously enforce agreements to arbitrate.'" *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Section 2 of the FAA provides that "[a] written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. §2.

{¶10} Where the parties have entered into an arbitration agreement, a court should apply "a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004), quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003). *See also Moses H. Cone*, 460 U.S. at 24-25 ("As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")

**{¶11}**  Applying these principles to the instant case, we conclude that the Arbitration Agreement is enforceable notwithstanding the NAF's unavailability.   The parties to the Note have manifested a clear intent to arbitrate their claims, and this intention is not contingent on the availability of a particular arbitrator.   We base our conclusion on two independent bases.[6]

**{¶12}** First, §5 of the FAA disposes of the Citraros' argument that the NAF's unavailablity precludes Sallie Mae from exercising its right to arbitrate.   Section 5 governs the appointment of arbitrators and provides as follows:

> If in the agreement provision be made for a method of naming or appointing an arbitrator * * *, such method shall be followed; but if no method be provided therein, *or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator * * * *, or in filling a vacancy, then upon the application of either party to the controversy *the court shall designate and appoint an arbitrator*, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. (Emphasis added).   This provision plainly requires that the court appoint an arbitrator where the specified arbitration forum is no longer available.   *See e.g., Wilson v. Dell Fin. Servs. LLC*, No. 5:09-cv-00483, 2010 U.S. Dist. LEXIS 10809 at *5 (S.D. W.Va. Feb. 8, 2010) (noting that §5 "empower[s] courts to appoint a substitute if the

---

[6]We also note that other court decisions have confirmed the enforceability of this very same arbitration agreement.  *See, e.g., Smith v. ComputerTraining.com, Inc.*, 772 F. Supp.2d 850 (E.D. Mich. 2011).

arbitrator provided for in the agreement cannot or will not perform," and rejecting the argument that the named arbitrator was "integral" to the arbitration agreement).

{¶13} Applying §5 of the FAA to the Arbitration Agreement, the result is inescapable: the parties' agreement to arbitrate survives the NAF's unavailability. The Arbitration Agreement did provide a method of naming or appointing an arbitrator, but that method became unworkable due to the NAF's unavailability and the Citraros refusal to avail themselves of the alternative arbiter: the AAA. In such circumstances, §5 empowers the trial court to save the agreement by appointing an arbitrator.[7] In this case, the trial court erred in ruling that the Arbitration Agreement had become unenforceable. Instead, the trial court should have enforced the Arbitration Agreement and appointed an arbitrator.

{¶14} Second, the severability clause in the Arbitration Agreement evidences the parties' intent to arbitrate regardless of the NAF's availability. The clause states that "[i]f any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply * * * ." Note § XVI(10). The contested paragraph of the Arbitration Agreement provides that:

> The NAF will be the Administrator unless: (a) you and I agree otherwise; (b) I am the Claimant and I initiate an arbitration before the AAA or (c) I assert a Claim in court, you elect to arbitrate the Claim and I give you written notice that I am selecting the AAA as Administrator within 20 days thereafter (or, if I dispute your right to require arbitration of my Claim, I

---

[7]In other words, the Citraros could choose to arbitrate using the AAA or they could choose to have the trial court select the arbitrator. But they did not have the option of evading the Arbitration Agreement altogether and filing an action in court.

select the AAA as Administrator within 20 days after that dispute is finally resolved).

Note § XVI(3).

{¶15} The NAF is no longer an available administrator and none of the conditions have been fulfilled under which the AAA would be selected. Because this provision of the Arbitration Agreement is unenforceable, it must be severed from the Arbitration Agreement.

{¶16} But the rest of the Arbitration Agreement continues to apply, and what remains manifests the parties' clear intention to arbitrate. *See Morrison v. Circuit City Stores*, 317 F.3d 646, 675 (6th Cir. 2003) (en banc) (where arbitration agreement contains severability clause, district court must compel arbitration after severing unenforceable provisions). Section XVI sets forth that the parties "agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim * * * ,'" and if a party gives notice of an intent to arbitrate a claim, that claim "shall be resolved by arbitration." Essentially, the Note provided the Citraros with two choices: to either reject the Arbitration Agreement altogether (Note § XVI(1)), or to arbitrate any disputes that might arise between the Citraros and Sallie Mae. As the Citraros did not reject the Arbitration Agreement, they signaled their agreement to arbitrate their claims.

{¶17} The Citraros argue that when a selected forum cannot arbitrate a claim, a court cannot enforce the arbitration agreement, regardless of the existence of a severability clause. But the Citraros rely on case law where the arbitration agreement identified an exclusive forum which then became unavailable. *See e.g., Klima v.*

*Evangelical Lutheran Good Samaritan Soc.*, 10-cv-1390-JAR-JPO, 2011 U.S. Dist. LEXIS 129486 (D. Kan. Nov. 8, 2011) (refusing to enforce an arbitration agreement in the wake of the NAF's unavailability where the agreement contained express language that NAF was the exclusive arbitrator and that the arbitration "shall be conducted * * * in accordance with the [NAF] Code of Procedure for arbitration.").

**{¶18}** We need not decide whether such language would render the Arbitration Agreement unenforceable. In the instant case, although the NAF is named as the default arbitrator, NAF was not named as the "exclusive" arbitrator to the Arbitration Agreement. Rather, the Arbitration Agreement named the NAF as one of two eligible administrators and did not specify that either was exclusive. Moreover, rather than reference the rules of any particular arbitrator, the Arbitration Agreement here generally specifies that any claim "shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect." Note §XVII(5). Accordingly, the Citraros argument is unavailing.[8]

**{¶19}** The trial court's order is reversed. Although the question of whether the Arbitration Agreement was unconscionable still lingers, we conclude that this is a matter for the trial court to resolve on remand. The Ohio Supreme Court has held that "the proper standard of review of a determination of whether [an] arbitration agreement is enforceable in light of a claim of unconscionability is de novo, but any factual findings of

---

[8]Furthermore, to the extent that the Citraros raise a colorable argument, we are instructed to resolve any doubts in favor of arbitrability. *See Masco Corp.*, 382 F.3d at 627.

the trial court must be accorded appropriate deference." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2.

**{¶20}** In the instant case, the trial court has yet to make any fact findings with respect to the allegation that the Arbitration Agreement is unconscionable. The trial court explicitly stated in its order that it was not addressing whether the Arbitration Agreement was unenforceable due to unconscionability. Accordingly, we remand this case to the trial court with instructions to make findings of fact and to render a ruling on whether the Arbitration Agreement is unconscionable as a matter of law.[9] If the trial court determines that the Arbitration Agreement is not unconscionable, then the trial court is instructed to select an arbitrator and to issue an order compelling arbitration.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[9]We reject Sallie Mae's argument that the Citraros waived the right to assert unconscionability because it was not raised in their complaint. The Citraros raised unconscionability as a defense to Sallie Mae's motion to compel arbitration. There was no reason for the Citraros to raise unconscionability in their complaint as this defense did not ripen until Sallie Mae asserted its right to arbitrate the dispute. As the Citraros raised unconscionability at the appropriate time, there is no waiver.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR