MARY J. BOYLE, P.J.:
{¶ 1} Defendant-appellant, Parkview Custom Homes, L.L.C. ("Parkview"), appeals the trial court's order denying its motion to stay litigation and compel arbitration. It raises one assignment of error for our review:
The trial court erred in finding that the arbitration clause is unenforceable under the doctrine of impossibility.
{¶ 2} Finding merit to Parkview's assignment of error, we reverse and remand.
I. Procedural History and Factual Background
{¶ 3} In August 2012, plaintiffs-appellees, Bryan and Kristi Paulozzi, entered into a construction agreement ("the Agreement") with Parkview. Under the Agreement, the Paulozzis would pay Parkview $552,469 to build them a home in Strongsville, Ohio. The Agreement set forth the following remedies:
REMEDIES: If Owner fails to satisfy Owner's obligations, defaults, or breaches with respect to this Agreement, at Contractor's option, Contractor may (a) terminate this Agreement and all deposits and payments by Owner shall be the property of Contractor (as liquidated damages) and Contractor and Owner shall be relieved from all obligations hereunder, or (b) sue for damages or specific performance in the Court of Common Pleas with jurisdiction or (c) arbitrate any claim or dispute as provided below.
If Contractor fails to satisfy its obligations, defaults, or breaches with respect to this Agreement, as Owner's sole remedies, Owner may either (d) terminate this Agreement and shall receive all payments and deposits made by Owner in excess of actual costs incurred by Contractor (with any dispute as to said costs or any related matter to be determined solely by arbitration, as provided below) and Contractor and Owner shall be relieved from all obligations hereunder, or (e) proceed through arbitration[.]
* * *
In the event any remedy or limitation of remedy is invalid or unenforceable, such invalidity or unenforceability shall not adversely effect any other limitation or remedy of either Owner or Contractor.
* * *
*646 {¶ 4} The Agreement also set forth the following arbitration clause:
ARBITRATION:
(a) With respect to all claims, breaches, defaults, disputes and damages arising out of or related to this Agreement or the Property or the Residence (whether grounded in contract or tort), to which arbitration applies, as provided above, the arbitration shall be conducted under the auspices of the Ohio Arbitration and Mediation Center in accordance with its rules, at Cleveland, Ohio. The cost of the arbitration shall be paid one-half (1/2) by each party, and each party shall be responsible for all fees and costs which they incur in engaging counsel or other experts in representing them in the arbitration proceeding. The decision of the arbitrator shall be conclusive and may be enforced in any court with jurisdiction over the parties.
(b) Ohio law contains important requirements the Owner must follow before the Owner may file lawsuit or commence arbitration proceedings for defective construction against the residential contractor (Seller) which constructed the Owner's home. At least sixty (60) days before the Owner files lawsuit or commences arbitration proceedings, the Owner must provide the contractor with written notice of the conditions the Owner alleges are defective. Under Chapter 1312, of the Ohio Revised Code, the contractor has an opportunity to offer to repair or pay for the defects. The Owner is not obligated to accept any offer the contractor makes. There are strict guidelines and procedures under State law, and failure to follow them may affect the Owner's ability to file lawsuit or commence arbitration proceedings.
{¶ 5} According to the Paulozzis, Parkview finished building the home in 2013; however, within the first year of moving into the home, the Paulozzis allege that they experienced issues with the driveway and kitchen floor. The Paulozzis allege that they informed Parkview of the problems, but that Parkview never fixed the problems and did not respond to their 60-day notice of construction defect letter.
{¶ 6} In September 2017, the Paulozzis filed a complaint against Parkview, National Carpet Outlet, Inc., and an "unknown concrete-pouring company." The Paulozzis set forth claims for breach of contract, unjust enrichment, conversion, promissory estoppel, negligent misrepresentation, fraudulent misrepresentation, breach of express warranty, breach of implied warranty, violations of Ohio's Home Construction Service Suppliers Act, and violations of Ohio's Consumer Sales Practices Act against Parkview.
{¶ 7} Parkview moved to stay the litigation and compel arbitration under the Agreement's arbitration provision. The Paulozzis opposed Parkview's motion, arguing that the arbitration clause was unenforceable because
the parties['] chosen arbitration forum, Ohio Arbitration and Mediation Center ("OAMC"): (1) is non-responsive and appears to be defunct; (2) likely was defunct when the parties entered into their Construction Agreement ("the Agreement"); and (3) has a fatal conflict of interest due to undisclosed relationships between OAMC's representatives and Parkview's principals.
The Paulozzis argued that ordering arbitration would therefore be pointless. The Paulozzis also argued that the arbitration *647 clause was void due to fraud; specifically, the Paulozzis argued that Parkview failed to disclose the professional relationship that it had with the OAMC.[1]
{¶ 8} Parkview filed a reply brief, arguing that the "essential purpose of the arbitration provision" was "still capable of substantial accomplishment." It stated that even if or though the OAMC was no longer operational, the court only had to appoint or the parties only had to agree to a different arbitrator. Parkview also argued that "the limited relationship between * * * Parkview * * * and the OAMC" is irrelevant and does not establish bias.
{¶ 9} The trial court denied Parkview's motion in a judgment entry, stating
The arbitration clause at issue in this case states that the arbitration "shall be conducted under the auspices of the [OAMC.]" However, the OAMC is now defunct. The arbitration agreement did not provide for an alternative arbitration forum. Therefore, the arbitration clause is unenforceable under the doctrine of impossibility.
{¶ 10} It is from this order that Parkview now appeals.
II. Law and Analysis
{¶ 11} In its sole assignment of error, Parkview argues that the trial court erred in finding that the Agreement's arbitration provision was unenforceable under the doctrine of impossibility. Parkview's arguments in support of its assignment of error are nearly identical to that argued in its reply brief filed below and discussed above, with the exception of a newly-added argument that the trial court "failed to give full effect and meaning to the severability clause of the agreement." The Paulozzis' arguments in response are the same as those they raised in their opposition below.
Standard of Review
{¶ 12} "The appropriate standard of review on judgments pertaining to the enforceability of an arbitration agreement depends on the questions raised in challenging the applicability of the arbitration provision." Javorsky v. Javorsky , 8th Dist. Cuyahoga, 2017-Ohio-285, 81 N.E.3d 971, ¶ 7, citing McCaskey v. Sanford-Brown College , 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, 2012 WL 1142880. For example, when determining whether a party has waived its right to arbitration under an agreement, we review for an abuse of discretion. Heeden v. Autos Direct Online, Inc. , 8th Dist. Cuyahoga, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9, citing McCaskey. Questions of contract interpretation (i.e., whether a party has agreed to be subject to an arbitration provision or questions of unconscionability), however, are reviewed under a de novo standard of review. Brownlee v. Cleveland Clinic Found. , 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, 2012 WL 1795273, ¶ 8 ; see also N. Park Retirement Community Ctr., Inc. v. Sovran Cos. , 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, 2011 WL 4600700, ¶ 7 ("Arbitration is ultimately a private agreement to avoid the courts - so if the parties have agreed to arbitrate a dispute, the court's refusal to stay proceedings would in essence force the parties to submit to court proceedings to which they had agreed to avoid. It follows that appellate courts must review questions of arbitrability under the de novo standard of review applied to contracts. The abuse of *648 discretion standard of review has no application in the context of the court deciding to stay proceedings pending the outcome of arbitration because a stay in such circumstances is mandatory, not discretionary.").
{¶ 13} Further, we give "great deference" to a trial court's factual findings. See Taylor Bldg. Corp. of Am. v. Benfield , 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 37 ("When a trial court makes factual findings * * * supporting its determination that a contract is or is not unconscionable, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference.").
{¶ 14} Here, the trial court found that the arbitration clause was unenforceable under the doctrine of impossibility. Like unconscionability, impossibility is an affirmative defense to contract claims.[2] See Dennison v. Dennison , 7th Dist. Monroe No. 08 MO 1, 2008-Ohio-6924, 2008 WL 5412391, ¶ 38, citing Skilton v. Perry Local School Dist. Bd. of Edn. , 11th Dist. Lake No. 2001-L-140, 2002-Ohio-6702, 2002 WL 31744700 ("Impossibility is typically an affirmative defense * * * to breach of contract * * * claims."). As a result, we review de novo whether the arbitration provision is unenforceable because it is impossible. The trial court's conclusion that the arbitration provision is impossible to enforce leads us to conclude that it found that the OAMC is no longer operational, a factual finding to which we give "great deference."
Ohio Arbitration Act
{¶ 15} Ohio public policy favors enforcement of arbitration provisions. Arbitration is encouraged as a method of dispute resolution and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision. Williams v. Aetna Fin. Co. , 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). Ohio's policy of encouraging arbitration has been declared by the legislature through the Ohio Arbitration Act, R.C. Chapter 2711. Goodwin v. Ganley, Inc. , 8th Dist. Cuyahoga No. 89732, 2007-Ohio-6327, 2007 WL 4201359, ¶ 8.
{¶ 16} R.C. 2711.01(A) provides that an arbitration agreement in a written contract "shall be valid, irrevocable, and enforceable, except upon grounds that exist *649 in law or equity for the revocation of any contract." Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties in accordance with R.C. 2711.02(B), which provides:
If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.
Any doubts regarding arbitration should be resolved in its favor. Ignazio v. Clear Channel Broadcasting, Inc. , 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.[3]
{¶ 17} With these principles in mind and applying a de novo standard of review, we turn to whether the Agreement's arbitration provision is impossible to perform and, therefore, unenforceable.
Impossibility
{¶ 18} "Impossibility of performance occurs where after the contract is entered into 'an unforeseen event arises rendering impossible the performance of one of the contracting parties. * * * However, a contracting party will not be excused from performance merely because performance may prove difficult, dangerous, or burdensome.' " Leon v. State Farm Fire & Cas. Co. , 8th Dist. Cuyahoga, 2017-Ohio-8168, 98 N.E.3d 1284, ¶ 11, citing Truetried Serv. Co. v. Hager , 118 Ohio App.3d 78, 691 N.E.2d 1112 (8th Dist.1997).
{¶ 19} Here, the Agreement is not unenforceable due to impossibility because it is still possible to arbitrate the issues between the parties despite the OAMC's absence. See Koon v. Hoskins , 4th Dist. Vinton No. 95CA497, 1996 WL 30018, 7 (Jan. 24, 1996), citing Bd. of Edn. of Bath Twp. v. Townsend , 63 Ohio St. 514, 59 N.E. 223 (1900) ("So long as a contract is capable of performance in any mode contemplated by the parties, its performance cannot be said to have become impossible."); see also Gar Energy & Assocs. v. Ivanhoe Energy, Inc. , E.D.Cal. No. 1:11-CV-00907, 2011 WL 6780927, 8 (Dec. 27, 2011) ("Here, the 'nature of the thing to be done' is arbitration, and impossibility does not attach to the procedure by which the arbitration is accomplished. Consequently, plaintiffs have failed to show that impossibility excuses performance of the arbitration agreement.").
{¶ 20} " '[W]hen deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause[.]' " Arnold v. Burger King , 8th Dist. Cuyahoga, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 28, quoting Taylor v. Ernst & Young, L.L.P. , 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203. It is *650 clear that the parties agreed to the arbitration provision and, therefore, arbitration should be compelled despite the OAMC's absence. To hold otherwise would defeat the parties' intentions when they entered into the contract and agreed to arbitrate the dispute.
{¶ 21} In fact, considering that the Paulozzis argue that the OAMC was a biased entity and that Parkview wants to arbitrate the issues despite the OAMC's absence, it is clear that finding and appointing a different arbitration forum would actually quell both parties' concerns. Both the Paulozzis and Parkview are still able to perform their contractual duties under the arbitration provision - which is to arbitrate the issues between them - and, therefore, the provision is not unenforceable under the doctrine of impossibility. As a result, we find that the arbitration provision is not impossible and, therefore, is enforceable.
{¶ 22} Both Parkview and the Paulozzis discuss our decision in Citraro v. Computertraining.com Inc. , 8th Dist. Cuyahoga No. 99278, 2013-Ohio-3249, 2013 WL 3894969, where we analyzed whether "the arbitration agreement was unenforceable because one of the potential arbitration forums referenced in the agreement had become unavailable." Id. at ¶ 1. While the parties in Citraro did not raise and we did not analyze whether the agreement was unenforceable due to impossibility, we believe that analyzing Citraro is necessary.
{¶ 23} In Citraro, the agreement between the parties stated that any arbitration between the parties would be resolved by "the applicable rules of [either the American Arbitration Association or the National Arbitration Forum] then in effect" and that the agreement was governed by the FAA. Id. at ¶ 2. The agreement also contained a severability clause that stated, "If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply[.]" Id. at ¶ 14.
{¶ 24} We concluded that the arbitration agreement was enforceable "notwithstanding NAF's unavailability [because the] parties to the Note have manifested a clear intent to arbitrate their claims, and this intention is not contingent on the availability of a particular arbitrator." Id. at ¶ 11. We based our conclusion on the fact that (1) Section 5 of the FAA "plainly requires that the court appoint an arbitrator where the specified arbitration forum is no longer available," and (2) "the severability clause in the Arbitration Agreement evidences the parties' intent to arbitrate regardless of the NAF's availability." Id. at ¶ 12-14. Specifically, as to the severability clause, we found that while the portion of the arbitration clause concerning NAF was unenforceable, "the rest of the [agreement] continues to apply, and what remains manifests the parties' clear intention to arbitrate." Id. at ¶ 16. We stated, "[a]s the Citraros did not reject the [agreement], they signaled their agreement to arbitrate their claims." Id.
{¶ 25} While we noted the appellants' argument that "when a selected forum cannot arbitrate a claim, a court cannot enforce the arbitration agreement, regardless of the existence of a severability clause[,]" we found that we did not need to decide "whether such language would render the [agreement] unenforceable" because the agreement did not identify NAF as the "exclusive" arbitrator or specify that NAF or AAA were exclusive. Citraro , 8th Dist. Cuyahoga No. 99278, 2013-Ohio-3249, at ¶ 18. We based our finding on the fact that "rather than reference the rules of any particular arbitrator, the [agreement] here generally specifies that any claim 'shall be resolved by arbitration under this [agreement] and the applicable *651 rules of the [arbitration forum] then in effect.' " Id.
{¶ 26} There are a number of distinctions between this case and Citraro. First, the contract in Citraro was governed by the FAA, whereas the Agreement between Parkview and the Paulozzis is not. Therefore, to the extent that our holding in Citraro relied on the fact that the FAA requires a court to appoint a new arbitrator when the original arbitrator identified by an agreement between the parties is no longer available, Citraro is not helpful. Second, while the agreement in Citraro and the Agreement in this case both contained a severability clause, the agreement in Citraro identified two arbitration forums, whereas the Agreement in this case only identified one, and the Agreement in this case does reference particular rules, stating that the arbitration would be conducted "under the auspices of the [OAMC] in accordance with its rules[.]"
{¶ 27} Despite the above distinctions, we nevertheless reach a similar conclusion to that in Citraro . Like the agreement in that case, the Agreement between the Paulozzis and Parkview does not identify the OAMC as the "exclusive" arbitrator. The parties' positions in this appeal support that conclusion. As we noted above, the Paulozzis believe that having the OAMC serve as an arbitrator would have been unfair, and Parkview still desires arbitration even though its preferred arbitration forum is no longer viable. Therefore, it does not appear that either party is opposed to having another arbitrator handle the dispute.
{¶ 28} Furthermore, like Citraro , 8th Dist. Cuyahoga No. 99278, 2013-Ohio-3249, we find that mention of the OAMC can be severed from the Agreement. "Whether a part of a contract may be severed from the remainder 'depends generally upon the intention of the parties, and this must be ascertained by the ordinary rules of construction.' " Ignazio , 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, at ¶ 11, quoting Huntington & Finke Co. v. Lake Erie Lumber & Supply Co. , 109 Ohio St. 488, 143 N.E. 132 (1924).
{¶ 29} Here, the severability clause, agreed to by both parties, states, "In the event any remedy or limitation of remedy is invalid or unenforceable, such invalidity or unenforceability shall not adversely effect any other limitation or remedy of either Owner or Contractor." Identifying the OAMC as the arbitrator was a limitation of the parties' remedy of arbitration. Because the OAMC is no longer available, that portion must be severed from the Agreement. Severing the identification of the OAMC from the arbitration provision leaves the provision without an identified arbitrator. However, upon application by either party to the court of common pleas, that court may appoint an arbitrator to handle the dispute between the parties. See R.C. 2711.04. As a result, the identification of the OAMC as the arbitrator may be severed from the arbitration provision, which is still enforceable.
Fraud
{¶ 30} The Paulozzis also argue that the arbitration provision is unenforceable because it was induced by fraud. This, however, is a matter for the trial court to decide on remand as the trial court must make findings of fact before we can review the issue. See Citraro , 8th Dist. Cuyahoga No. 99278, 2013-Ohio-3249, at ¶ 19 ("Although the question of whether the Arbitration Agreement was unconscionable still lingers, we conclude that this is a matter for the trial court to resolve on remand. * * * [T]he trial court has yet to make any fact findings with respect to the allegation that the Arbitration Agreement is unconscionable. * * * Accordingly, we remand this case to the trial court with *652 instructions to make findings of fact and to render a ruling on whether the Arbitration Agreement is unconscionable as a matter of law.").
{¶ 31} Accordingly, we reverse the trial court's finding that the arbitration provision was impossible and, therefore, unenforceable and remand the matter to the trial court to make factual findings and a ruling as to whether the arbitration clause was induced by fraud.
{¶ 32} Judgment reversed, and case remanded to the lower court for further proceedings consistent with this opinion.
SEAN C. GALLAGHER, J., and KATHLEEN ANN KEOUGH, J., CONCUR

The Paulozzis alleged that a conflict of interest arose from the fact that two of Parkview's employees were past presidents of the Home Builders Association of Greater Cleveland ("HBA") and that the OAMC's statutory agent and incorporator was a trustee for the HBA.

As the Ohio Supreme Court explained in Taylor Bldg. Corp. of Am.,
Unconscionability includes both " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " Lake Ridge Academy v. Carney , 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993), quoting Williams v. Walker-Thomas Furniture Co. (D.C.Cir.1965), 350 F.2d 445, 449, 121 U.S. App. D.C. 315 ; see also Collins v. Click Camera & Video, Inc. , 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. Id. at ¶ 33.
When objecting to Parkview's motion to compel arbitration, however, the Paulozzis did not argue that the arbitration provision was unconscionable and therefore unenforceable. As a result, especially considering the trial court's lack of factual findings, we will not consider whether the arbitration provision was unconscionable for the first time on appeal. See id. at ¶ 57 (Boyle, J., dissenting in part and concurring in part), quoting Eagle v. Fred Martin Motor Co. , 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161 (9th Dist.) (" 'If a contract or term in a contract is found to be unconscionable at the time that the contract was made, a court may choose to either refuse to enforce the contract, enforce the contract without the unconscionable portion, or limit the application of the unconscionable portion to avoid an unconscionable result.' ").

Ohio's strong policy favoring arbitration is consistent with federal law supporting arbitration. See Federal Arbitration Act ("FAA"), Section 2, Title 9, U.S. Code ("A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").